## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRIS CARDONI, | ) | |
| WESLEY WEBB, | ) | |
| TERRY BLAIN, and | ) | |
| BILLY SHAFFER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-0319-CVE-PJC |
| | ) | |
| PROSPERITY BANK, | ) | |
| ERIC DAVIS, and | ) | |
| ANTHONY DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are Defendant Prosperity Bank's Motion to Transfer Venue (Dkt. # 14) and Defendant Prosperity Bank's Motion to Strike Portions of the Affidavits of Plaintiffs (Dkt. # 39). Defendant Prosperity Bank (Prosperity) asks the Court to transfer this case to the United States District Court for the Southern District of Texas, because plaintiffs signed employment agreements containing a mandatory forum selection designating Texas as the exclusive venue for any dispute arising out of the employment agreements. Plaintiffs respond that the forum selection clause is unenforceable because Prosperity and/or its agents fraudulently induced plaintiffs to sign the employment agreements containing the forum selection clause. The Court set this matter for evidentiary hearing on July 8, 2014, and the Court heard arguments as to the enforceability of the forum selection clause.

# I.

Plaintiffs Chris Cardoni, Wesley Webb, Terry Blain, and Billy Shaffer were employees of F&M Bank (F&M) in Tulsa, Oklahoma. On August 23, 2013, Cardoni, Webb, Blain, and Shaffer were instructed to attend a meeting scheduled for August 25, 2013, but the purpose of the meeting was not disclosed. Dkt. # 33-1, at 2. They attended the meeting and each of the plaintiffs was presented with an employment agreement offered by Prosperity. Id. Plaintiffs claim that they received notice at the meeting of a proposed sale of F&M to Prosperity. Jeff Pickryl, then-President of F&M, told everyone at the meeting that the proposed employment agreements were non-negotiable and that Prosperity would not "change a single word" of the agreement. Id. Plaintiffs were given until 5 p.m. on August 27, 2013 to accept or reject the employment agreements, and Pickryl told the plaintiffs that the proposed sale of F&M to Prosperity was contingent on acceptance of the proposed employment agreements by F&M's employees. Id. However, only 35 employees of F&M were offered employment agreements, and at least one of those 35 employees rejected the proposed employment agreement. Dkt. # 35-1, at 2-3.

The proposed employment agreements offered to Cardoni, Webb, Blain, and Shaffer were similar in all respects except for the salary and restricted common stock offered to each.[1] The

---

[1] Blain, Shaffer, Webb, and Cardoni were offered positions as senior vice presidents of Prosperity and their base salaries ranged from $175,100 to $227,630. The base salary was guaranteed for the entire employment period, and the employee would receive a lump sum payment for any outstanding salary owed under the agreement if the employee was terminated for a reason other than cause or disability. Dkt. # 14-1, at 10. Blain, Webb, and Shaffer were offered 3,000 restricted shares of Prosperity common stock, and Cardoni was offered 5,000 restricted shares of Prosperity common stock. Prosperity states that its common stock was valued at $61.79 per share as of June 25, 2014. Dkt. # 36, at 2. Defendants have submitted evidence that Shaffer demanded and received payment of $96,273 before he would agree to sign the employment agreement, but plaintiffs' counsel disputed this allegation at the evidentiary hearing. Dkt. # 35-2, at 4. For the purpose of this Opinion and Order, the Court will treat defendants' allegation concerning Shaffer's signing bonus as disputed and it will not take it into account in ruling on Prosperity's motion to transfer venue.

employment period was three years and the employment period would begin upon completion of the merger of F&M and Prosperity. Dkt. # 14-1, at 2.[2] The employment agreements contain a choice of law and a forum selection provision:

> 9.3 **Governing Law**. All questions concerning the validity, operation and interpretation of this Agreement and the performance of the obligations imposed upon the parties hereunder shall be governed by the laws of the State of Texas. Exclusive venue of any dispute relating to this Agreement shall be, and is convenient in, Texas. Employee agrees that he will not contest venue in Texas or the application of Texas laws to any dispute relating to, connected with or arising under this Agreement.

Id. at 11. The employment agreements describe "Confidential Information" to which a prospective employee will have access, and this includes, but is not limited to:

> information regarding past, current and prospective customers and investors and business affiliates, employees, contractors, and the industry not generally known to the public; strategies, methods, books, records, and documents; technical information concerning products, equipment, services, and processes; procurement procedures, pricing, and pricing techniques; including contact names, services provided, pricing, type and amount of services used, financial data; pricing strategies and price curves; positions; plans or strategies for expansion or acquisitions; budgets; research; financial and sales data; trading methodologies and terms; communications information; evaluations, opinions and interpretations of information and data; marketing and merchandising techniques; electronic databases; models; specifications; computer programs; contracts; organizational structure; personnel information; payments or rates paid to consultants or other service providers; and other such confidential or proprietary information. Employee acknowledges that the Bank's and Employer's respective businesses are highly competitive, that this Confidential Information constitutes a valuable, special and unique asset by each of the Bank and Employer in its business, and that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Bank and Employer.

Id. at 4-5. An employee of F&M would be given immediate access to the Confidential Information upon execution of the agreement and, in order to protect the Confidential Information, the

---

[2] Page citations are to the CM/ECF header and not to the page number of the employment agreements.

employment agreements contain a non-competition agreement should the employee leave Prosperity during the employment period.[3]  The employees agree not to directly or indirectly:

(a)      compete or engage, anywhere in the geographic area comprised of the fifty (50) mile radius surrounding each of (i) the banking centers of the Bank, (ii) the banking centers of the Employer that were formerly banking officers [sic] of the Bank or into which banking offices of the Bank were consolidated, and (iii) any other Employer banking center from which the Employee has worked (collectively, the "Market Area"), in a business similar to that of the Bank or Employer, or compete or engage in that type of business which the Bank or Employer has plans to engage in, or any business which the Bank or Employer has engaged in during the preceding twelve (12) month period if within the twenty-four (24) months before the termination of Employee's employment, Employee had access to information regarding the proposed plans or the business in which the Bank or Employer engaged;

(b)      take any action to invest in, own, manage, operate, control, participate in, be employed or engaged by or be connected in any manner with any partnership, corporation or other business or entity engaging in a business similar to that of the Bank or Employer anywhere within the Market Area.  Notwithstanding the foregoing, the Employee is permitted hereunder to own, directly or indirectly, up to one percent (1%) of the issued and outstanding securities of any publicly traded financial institution conducting business in the Market Area;

(c)      call on, service or solicit competing business from customers or prospective customers of the Bank or Employer if, within the twelve (12) months before the termination of Employee's employment with the Bank or Employer, Employee had or made contact with the customer, or had access to information and files about the customer; or

---

[3]      F&M is a party and signatory to each employment agreement, although Prosperity is the employer.  Dkt. # 14-1, at 5.  The Court has reviewed the employment agreements and it appears that F&M's role was limited to conveying the Confidential Information of F&M to the plaintiffs after execution of the employment agreements.  Id. at 5.  The employment agreements do not state that F&M has any other role in the employment relationship between Prosperity and each plaintiff, and Prosperity does not designate F&M as its agent for any other purpose.  In particular, Prosperity does not grant F&M any authority to speak on Prosperity's behalf concerning the meaning or interpretation of the employment agreement.  The Court also notes that F&M received no consideration under these employment agreements.

(d)     call on, solicit or induce any employee of the Bank or Employer whom Employee had contact with, knowledge or, or association with in the course of employment with the Bank or Employer to terminate employment from the Bank or Employer, and will not assist any other person or entity in such activities.

Id. at 6. The agreements also state that the parties' written agreement "supersedes any other . . . understandings, written or oral, between the Employer and/or its predecessors and the Employee" and the agreement "cannot be varied, contradicted or supplemented by evidence of any prior or contemporaneous oral or written agreements." Id. at 11.

After the August 25, 2013 meeting, Cardoni met with Anthony Davis, then-chairman and CEO of F&M, and Eric Davis, then-president of F&M Bancorporation,[4] and the Davises told Cardoni the bank would "continue to operate in the business 'as usual'" after the merger. Dkt. # 33-1, at 2. Shaffer also states that he told Eric Davis that he was contemplating not signing the employment agreement "in light of its restrictions, and Eric Davis allegedly told Shaffer that "the Prosperity contract would not be enforceable in an Oklahoma court and that's what mattered since [Shaffer] lived and worked in Oklahoma."[5] Dkt. # 33-4, at 2. Cardoni met with Pickryl on August 26, 2013. Pickryl allegedly told Cardoni that Prosperity could walk away from the merger if all of the F&M employees who were offered employment agreements refused to sign the agreements, and F&M would begin a downsizing process if the merger fell through. Dkt. # 33-1, at 2. Pickryl and Gregg Jaynes, F&M's then-vice president of human resources, declined to guarantee anyone's continued employment after the merger if that employee refused to sign the proposed employment

<hr>

[4]     Plaintiffs allege that F&M Bancorporation was the corporate parent of F&M. Dkt. # 33-4, at 1.

[5]     Shaffer does not allege that he shared Eric Davis' statement with the other plaintiffs, and the affidavits of the other plaintiffs do not reference Eric Davis' alleged statement to Shaffer.

agreement.  <u>Id.</u>  On August 27, 2013, Cardoni again spoke to Pickryl and Jaynes, and Pickryl allegedly told Cardoni that the agreement was unenforceable in Oklahoma.  <u>Id.</u> at 3.  Jaynes stated that he agreed with Pickryl's statement, but Cardoni was advised that his employment agreement "could not be changed from Texas to Oklahoma . . . ."  <u>Id.</u> at 3.  Cardoni went to Jaynes' office later on August 27, 2013 to inquire about the employee benefits offered by Prosperity, and he also followed up on his concerns about the choice of law and venue provisions of the agreement.  <u>Id.</u>  Jaynes reiterated his earlier statement that the language of the proposed employment agreements could not be changed, but he allegedly told Cardoni that it did not matter if the agreement had a venue provision.  <u>Id.</u>  According to Cardoni, Jaynes said that "because [Cardoni] live[s] and work[s] in Oklahoma any dispute would be decided by a court in Oklahoma under Oklahoma law and would not be decided in Texas by a Texas court."  <u>Id.</u>  Cardoni "understood" that Jaynes was making a representation that Prosperity would not seek to enforce the agreement in an Oklahoma court, but Cardoni did not speak to anyone at Prosperity about his belief.  <u>Id.</u>  There is no evidence that any of the plaintiffs did not have an opportunity to consult with an attorney about the enforceability of the forum selection or choice of law provisions, and plaintiffs have offered no evidence that either Pickryl or Jaynes had any legal expertise.

Cardoni spoke to Webb, Blain, and Shaffer and repeated the alleged statements made by Pickryl and Jaynes.  <u>Id.</u>  Pickryl called Cardoni to ask if Cardoni was going to sign the proposed employment agreement and Pickryl "reiterated the importance of getting as close as possible to 100% acceptance."  <u>Id.</u>  Cardoni signed the agreement on August 27, 2013 and delivered it to Jaynes' office at about 4 p.m. on that date, and he also delivered the signed agreements of Webb and

Blain.[6] Cardoni states that he believed that he could have lost his job and bonuses that he had already accrued if he did not sign agreement, and he expected that the accrued bonuses and stock benefits were worth approximately $330,000. Id. at 4.

Each of the plaintiffs states that F&M functioned as an "'organic growth bank,' which primarily generate[d] revenue and add[ed] asset value by making loans and collecting deposits through business generation efforts of the bank's officers." Id. Plaintiffs claim that they were assured that Prosperity would operate using a similar business model, but that Prosperity actually operates under a different business model that generates revenue by "acquiring and aggregating established banks." Id. Plaintiffs also claim that they were assured Prosperity would not change the terms for making loans or the plaintiffs' "role and reporting structure" and these were important factors in plaintiffs' decisions to sign the agreements. Id. However, plaintiffs claim that they were later informed that Prosperity would not use F&M's loan terms and policies. They also claim that their income and benefits are substantially less than they were while employed by F&M.

On June 2, 2014, plaintiffs filed this case in Tulsa County District Court. Dkt. # 2-2. Plaintiffs seek injunctive and declaratory relief preventing defendants from enforcing the non-competition provisions of the agreement, and they have also alleged claims of tortious interference with business relations and false representation. Plaintiffs seek a preliminary and permanent injunction barring enforcement of the non-competition provisions, and they seek money damages in excess of $75,000. On June 16, 2014, defendants removed the case to federal court on the basis

---

[6] At the hearing, counsel for Prosperity represented that the employment agreements were fully executed on August 29, 2013, but this does not contradict Cardoni's representation that he delivered the agreements signed by certain plaintiffs on August 27, 2013.

of diversity jurisdiction.[7]  Defendants filed a motion to transfer venue to the Southern District of Texas based on the forum selection clause in the agreements.  After this case was filed, Prosperity filed a case in Wharton County, Texas seeking declaratory relief and alleging claims for breach of contract against Cardoni, Webb, Blain, and Shaffer.  That case has been removed to the Southern District of Texas.  Prosperity Bank v. Cardoni et al., 14-CV-1884 (S.D. Tex.) (Houston Division).

## II.

Prosperity has filed a motion to transfer venue under 28 U.S.C. § 1404.  Challenges to venue are ordinarily raised early in the case before the parties have had an opportunity to conduct discovery.  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (10th Cir. 2004).  When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.  Huang v. Napolitano, 721 F. Supp. 2d 46, 48 n.3 (D.D.C. 2010); United States v. Gonzalez & Gonzales Bonds and Ins. Agency, Inc., 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010).  The Court also has the discretionary authority to hold an evidentiary hearing to resolve disputed factual issues.  Murphy, 362 F.3d at 1139-40.  In this case, the parties have submitted evidence outside of the pleadings, including affidavits and copies of plaintiffs' employment agreements.  At the hearing on July 8, 2014, the parties stipulated that any witnesses would testify in a manner consistent with their affidavits, but neither defendants nor plaintiffs stipulated to the truth of any statement contained in any person's affidavit.  For the purpose of this Opinion and Order, the Court will assume that

---

[7]  Prosperity is incorporated in and has its principal place of business in Texas.  The Davis defendants have submitted affidavits stating that they were citizens of Texas when the case was filed.  Dkt. # 2-17; Dkt. # 2-18.

plaintiffs' representations concerning the alleged statements of Eric Davis, Anthony Davis, Pickryl, and Jaynes are true, and the Court will assume that any such statements were actually made.

## III.

Defendants ask the Court to strike portions of plaintiffs' affidavits attached to their response to defendants' motion to transfer venue. Dkt. # 39. In plaintiffs' affidavits, they reference statements made by former employees of F&M in an attempt to show that they were fraudulently induced to sign the employment agreements offered by Prosperity. Certain statements in the affidavits would constitute hearsay if the statements were offered for the truth of the matter asserted. For example, Cardoni states that he spoke to Pickryl about the enforceability of the agreement in Oklahoma, and Pickryl said that the agreement would not be enforceable in an Oklahoma court. Dkt. # 33-1, at 3. If offered to prove that the agreement is unenforceable, the alleged statement by Pickryl would be hearsay. However, plaintiffs argue that this statement and other similar statements by Pickryl and Jaynes are not offered for the truth of the statements but, instead, the statements are being offered to show that the statements were made and that plaintiffs relied on the statements when they signed the employment agreements offered by Prosperity. Dkt. # 43, at 3. To show fraud, a party may rely on an out of court statement that would otherwise be excluded as hearsay if the statement is offered "for the mere fact that the statement was uttered." Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1556 (10th Cir. 1995). The Court will consider the alleged statements of Anthony Davis, Eric Davis, Pickryl, and Jaynes contained in the affidavits for the purpose of evaluating plaintiffs' argument that they were fraudulently induced to agree to the forum selection

clause, because the statements are not hearsay for this purpose.[8]  Defendants' motion to strike

portions of plaintiffs' affidavits (Dkt. # 39) should be denied.

## IV.

Defendants seek a transfer of venue to the Southern District of Texas based on the forum

selection clause in plaintiffs' employment agreements.  Dkt. # 14.  Plaintiffs respond that they were

fraudulently induced to sign the agreements by relying on statements by Anthony Davis, Eric Davis,

Pickryl and Jaynes, and they ask the Court to find that the forum selection clause is unenforceable.

Dkt. # 33.

The Court must initially determine if the parties' agreement contains a venue selection clause

or a forum selection clause. Unlike a forum selection clause, a venue selection clause authorizes, but

does not require, litigation in certain forums and it may permit multiple acceptable forums for

litigation.  SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 582 (10th Cir. 1997).

"The existence of a venue selection clause does not impose an absolute duty nor does it endow a

party with an absolute right to have every dispute between the parties litigated in the named forum."

Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163 (10th Cir. 1982).  On the other hand,

forum selection clauses are presumed to be valid and the burden is on the party resisting

enforcement to show that enforcement of the clause would be unreasonable under the circumstances.

Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991); M/S Bremen v. Zapata Off-Shore

Co., 407 U.S. 1, 15 (1972); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992).

---

[8]     This does not mean that the statements of any former F&M employee are relevant or that the
statements are attributable to Prosperity, and the Court will separately consider whether
plaintiffs have shown that the statements may be used to establish that they were
fraudulently induced to agree to the forum selection clause.

The party resisting enforcement of a forum selection clause "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992). The Tenth Circuit has found that forum selection clauses fall into two general categories - mandatory or permissive. Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997). A mandatory forum selection clause must contain "clear language showing that jurisdiction is appropriate only in the designated forum." Id. (quoting Thompson v. Founders Group Int'l, 886 P.2d 904, 910 (Kan. Ct. App. 1994)). A permissive forum selection clause permits suit to be brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. SBKC Serv. Corp., 105 F.3d at 581-82.

The contractual provision in this case is a mandatory forum selection clause requiring that claims concerning the agreement be litigated in Texas. The agreement states that "[e]xclusive venue of any dispute relating to this agreement shall be, and is convenient in, Texas." Dkt. # 14-1, at 11. The provision does not simply permit the parties to litigate in a specified forum but, instead, states that Texas is the only proper venue. The agreement mandates that the "exclusive" venue for any dispute arising out of the agreement is Texas, and this shows a clear intent by the parties to litigate only in Texas. The use of the exclusive term "shall" is also evidence that the parties intended to limit jurisdiction to a particular forum or forums. See American Soda, LLP v. U.S. Filter Wastewater Group, Inc., 428 F.3d 921, 927 n.4 (10th Cir. 2005). There is no dispute that plaintiffs' claims "relat[e] to this agreement," and plaintiffs' claims fall within the scope of the forum selection clause. The forum selection clause is "prima facie valid" unless plaintiffs can meet their heavy

burden to show that the clause is invalid or that enforcement of the clause would be unjust under the circumstances. Riley, 969 F.2d at 957.

Plaintiffs have not made any argument that the forum selection clause is permissive, as opposed to mandatory, but they instead argue that the forum selection clause is unenforceable due to fraudulent conduct of Prosperity. Plaintiffs must show that Prosperity made fraudulent statements going to the forum selection clause itself. Riley, 969 F.2d at 960; Montoya v. Financial Federal Credit, Inc., 872 F. Supp. 2d 1251, 1262 (D.N.M. 2012); Hammond v. Alfaro Oil & Gas, LLC, 2011 WL 976711 (D. Kan. Mar. 17, 2011). "A general claim of fraud or misrepresentation concerning an entire contract does not affect the validity of a forum selection clause . . . [and] the party challenging the clause must demonstrate that the forum selection clause itself is the product of fraud or coercion." Barton v. Key Gas Corp., 2006 WL 2781592, *2 (D. Colo. Sep. 26, 2006). Even if the Court were to assume that plaintiffs' affidavits are entirely true, the affidavits do not show that Prosperity, or anyone acting on behalf of Prosperity, made a statement to plaintiffs about the enforceability of the forum selection clause. Jaynes and Pickryl were employees of F&M when the proposed employment agreements were presented to plaintiffs, and there is no evidence tending to show that they acted on behalf of Prosperity when the employment agreements were presented to F&M's employees.[9] At the hearing, plaintiffs argued that the statements of Pickryl and Jaynes

---

[9]     In plaintiffs' response to defendant's motion to strike statements in plaintiffs' affidavits, plaintiffs state that "[s]ince Prosperity was a party to the agreement, Prosperity clearly relied upon and authorized F&M to present the contracts to F&M employees and make any necessary representations . . . ." Dkt. # 43, at 5. However, this statement is not supported by any evidence, and the mere fact that Pickryl, Jaynes, or the Davises presented the employment agreements to plaintiffs is not sufficient to establish that they were authorized by Prosperity to make statements about Prosperity's beliefs concerning the enforceability of certain provisions of the agreement.

should be deemed attributable to Prosperity due to the subsequent merger of F&M and Prosperity. However, the cases cited by plaintiffs in support of this argument simply show that the statements could be admissible under the hearsay rules, but the cases do not establish as a matter of law that the statements of Pickryl and Jaynes are binding on Prosperity. See Genebacher v. CenturyTel Fiber Co. II, 244 F.R.D. 485 (C.D. Ill. 2007); Sherif v. AstraZeneca, 2002 WL 23250023 (E.D. Pa. May 9, 2002). Even if the statements of Pickryl and Jaynes were relevant, many of the alleged statements suggest that they might have wanted the merger of F&M and Prosperity to take place to reduce any risk that current employees of F&M would lose their jobs. Dkt. # 33-1, at 2. This tends to suggest that they wanted the merger to succeed for the benefit of F&M employees, rather than for the benefit of Prosperity. Plaintiffs have also not presented evidence that they made any attempt to verify Pickryl's or Jaynes' statements about the enforceability of the agreement and/or the forum selection clause with Prosperity, and they do not argue that Pickryl, Jaynes, or Prosperity discouraged them from seeking legal advice about the agreement or the forum selection clause.[10] The Court also takes note that plaintiffs were high-ranking employees of F&M, and it is reasonable to assume that they were sophisticated businessmen. The evidence shows that plaintiffs were aware of the forum

---

[10]     There is no evidence in the record that either Pickryl or Jaynes had any legal expertise, and it not clear that plaintiffs could have reasonably relied on Pickryl's or Jaynes' statements concerning the enforceability of the agreement or any provision in the agreement. It is also a well established legal principle that claims of fraud involve a misstatement of fact. Myklatun v. Flotek Indus., Inc., 734 F.3d 1230, 1234-35 (10th Cir. 2013) (explaining that fraud under Oklahoma law requires a false statement or omission as to a material fact); see also Debnam v. FedEx Home Delivery, 2011 WL 1188437 (D.Mass. Mar. 31, 2011) (alleged false statement asserting a legal conclusion was not a misstatement of fact that could support a fraud claim). Even if Pickryl or Jaynes offered a legal conclusion about the enforceability of the forum selection clause, this would not be an assertion of fact that would support plaintiffs' argument that they were fraudulently induced to agree to the forum selection clause.

selection clause before they signed the agreement and that they appreciated the consequences of signing the agreement. A sophisticated businessman would not sign an agreement and assume that certain provisions were unenforceable based on the alleged oral statements of someone without authority to bind the other party to the contract.[11] Plaintiffs have not met their heavy burden to show that the forum selection clause is invalid due to fraud.

Plaintiffs also argue that the forum selection clause is invalid due to the disparity in bargaining power between Prosperity and plaintiffs. Dkt. # 33, at 21. They claim that they had no role in negotiating the merger and that Prosperity refused to consider making any changes to the agreement. In general, a forum selection clause is enforceable even if one party to the contract had no opportunity to negotiate for the inclusion or exclusion of a forum selection clause. Carnival Cruise Lines, Inc., 499 U.S. at 594. Plaintiffs had sufficient time to consult an attorney and they could have refused to sign the agreement. Even though Prosperity may not have been willing to negotiate the terms of the forum selection clause, this is not a sufficient reason by itself to declare the forum selection clause invalid. Montoya, 872 F. Supp. 2d at 1263. Plaintiffs could have declined to sign the agreements and look for other employment, and the allegations in their petition show that they would likely have received other employment offers.[12] Dkt. # 2-2, at 9. Plaintiffs

---

[11]    The agreement also expressly states that the written agreement "supersedes any other employment agreements or understandings, written or oral, between the Employer and/or its predecessors and the Employee." Dkt. # 14-1, at 11. In other words, even if Pickryl or Jaynes were deemed to be acting on behalf of Prosperity when the alleged statements were made, the statements could not be used to contradict the express terms of the agreement.

[12]    In fact, a key component of the irreparable harm alleged in plaintiffs' petition and motion for preliminary injunction is that other banks have made offers of employment, but the other banks are reluctant to hire plaintiffs because of the non-competition provisions in plaintiffs' employment agreements with Prosperity.

chose to sign the agreements and keep their current jobs, and the fact that they could not negotiate for the exclusion of the forum selection clause is not evidence of undue pressure or overreaching.

In <u>Atlantic Marine Constr. Co., Inc. v. United States Dist. Court for the Western Dist. of Texas</u>, 134 S. Ct. 568 (2013), the Supreme Court explained that 28 U.S.C. § 1404(a) is the appropriate mechanism for a federal district court to transfer a case to another federal district court based on the presence of a forum selection clause. <u>Id.</u> at 579. Under § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses." The Tenth Circuit has identified several factors that should be considered by a district court when ruling on a motion to transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

<u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1516 (10th Cir. 1991). However, in a case involving the application of a mandatory forum selection clause, the standard analysis is altered in three significant ways. <u>Atlantic Marine Const. Co.</u>, 134 S. Ct. at 581. First, the plaintiff's choice of forum is entitled to no weight, because "when a plaintiff agrees by contract to bring suit only in a specified forum--presumably in exchange for other binding promises by the defendant--the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." <u>Id.</u> at 582. Second, the Court should not consider arguments going to the parties' private interests, and the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." <u>Id.</u> A court may consider public interest factors only, but these factors will "rarely defeat a transfer motion."

Id.  Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules," because it would encourage gamesmanship and could possibly allow a plaintiff to receive an unfair advantage by filing suit in a venue with more favorable choice-of-law rules.  Id. at 583.

Plaintiffs argue that non-competition agreements are disfavored as a matter of Oklahoma public policy, and the Court should decline to enforce the forum selection clause to avoid transferring the case to another court that would "possibly uphold" the non-competition agreement. Dkt. # 33, at 22-23.  At the hearing, plaintiffs cited this Court's decision in Southwest Stainless, L.P. v. Sappington, 2008 WL 918706 (N.D. Okla. Apr. 1, 2008), and they claim that the case stands for the proposition that a forum selection clause can be found invalid if enforcement of the underlying contract would result in a violation of an Oklahoma public policy.  However, Southwest Stainless actually concerned the enforceability of a choice of law provision, not a forum selection clause.  In Southwest Stainless, the three defendants agreed to sell their interest in Southwest Stainless, L.P. (Southwest) to HD Supply, Inc. (HD Supply), and they executed a non-competition agreement with HD Supply as part of the sale.  Id. at *1.  The parties agreed that their contractual relationship would be governed by Florida law.  Id.  Under Oklahoma's choice of law rules, the Court found that enforcement of the non-competition agreements would result in a violation of Oklahoma public policy, and the Court found that Oklahoma law should govern interpretation of the non-competition agreements.  Id. at *6.  There was no issue as to the enforceability of a forum selection clause in Southwest Stainless.  The Court finds that Southwest Stainless does not support plaintiffs' argument that a court may decline to enforce a forum selection clause when enforcement of the underlying

contract could possibly result in a violation of an Oklahoma public policy.[13]  The undisputed evidence shows that plaintiffs signed an agreement that offered them a substantial salary and stock benefits and, in return, Prosperity included a forum selection clause, a choice of law provision, and non-competition provisions as part of the agreement.  Under Atlantic Marine Constr. Co., plaintiffs cannot accept the benefits of the agreement without upholding their end of the bargain.  The Court will consider Oklahoma's public policy concerning non-competition agreements as a public interest factor, but this will not weigh heavily in the Court's analysis under Atlantic Marine Constr. Co. in determining whether the forum selection clause is enforceable.

The Court will consider public interest factors that are part of the traditional § 1404(a) analysis, and these factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  Atlantic Marine Constr. Co., 134 S. Ct. at 581 n.6.  Plaintiffs have not presented any evidence that administrative difficulties or court congestion will prevent plaintiffs from receiving a timely and fair trial in the Southern District of Texas.  There is also another pending case involving the same parties and subject matter in the Southern District of Texas, and judicial economy and preservation of the parties' resources support both cases being in one judicial district for possible consolidation.  The Court will take into account plaintiffs' interest in having a local forum hear a case involving Oklahoma residents, but this factor does not weigh heavily in favor of plaintiffs because of the choice of law provision in the agreement.

---

[13]     Plaintiffs have cited two state court decisions in which state appellate courts have declined to enforce a forum selection clause on public policy grounds.  See Lapolla Indus., Inc. v. Hess, 750 S.E.2d 467 (Ga. Ct. App. 2013); Beilfuss v. Huffy Corp., 685 N.W.2d 373 (Wis. Ct. App. 2004).  These decisions are based on state law, not federal law, and the Supreme Court's decision in Atlantic Marine Constr. Co. governs this Court's application of § 1404.

The parties agreed that Texas law would govern the case and there would be a greater advantage for the parties if the issues in this case were considered by a court more familiar with Texas law. Plaintiffs have not shown that the public interest factors weigh heavily against application of the parties' forum selection clause, and the Court finds that the forum selection clause should be enforced.

Defendant's motion to transfer venue (Dkt. # 14) should be granted, and the case should be transferred to the Southern District of Texas. Plaintiff's motion for preliminary injunction (Dkt. # 6) remains pending.

**IT IS THEREFORE ORDERED** that Defendant Prosperity Bank's Motion to Transfer Venue (Dkt. # 14) is **granted**, and Defendant Prosperity Bank's Motion to Strike Portions of the Affidavits of Plaintiffs (Dkt. # 39) is **denied**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to transfer this case to the United States District Court for the Southern District of Texas, Houston Division.

**DATED** this 9th day of July, 2014.

_____

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE